```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                    :
JOSE LUIS RODRIGUEZ-RAMOS,           :
                                    :
         Petitioner,                 :    Civ. No. 14-3942 (NLH)
                                    :
    v.                               :    OPINION
                                    :
FEDERAL BUREAU OF PRISONS, et al.,   :
                                    :
         Respondents.                :
_____:

APPEARANCES:

Jose Luis Rodriguez-Ramos, #03971-029
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640
     Petitioner, pro se

Frances C. Bajada
Office of the U.S. Attorney
970 Broad Street
Newark, NJ 07102
     Counsel for Respondents


HILLMAN, District Judge

    Petitioner, Jose Luis Rodriguez-Ramos, a federal prisoner confined at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, seeking restoration of approximately 200 days of Good Conduct Time credit. (ECF No. 1).

    This case was previously administratively terminated for failure to satisfy the filing fee requirement. (ECF No. 3).

Petitioner then filed an in forma pauperis application and an Amended Petition (ECF No. 4).  The Court granted Petitioner's in forma pauperis application and required Respondents to submit an Answer. (ECF No. 7).  Thereafter, on or about December 23, 2014, Petitioner filed a Second Amended Petition. (ECF No. 10).  Respondents filed a Response to the Second Amended Petition on February 4, 2015. (ECF No. 15).  Petitioner filed a Reply on or about February 20, 2015. (ECF No. 17).

For the reasons set forth below, the Petition will be denied.

## I.   BACKGROUND

On December 6, 2010, Petitioner was sentenced in the United States District Court for the District of Iowa to 260 months' imprisonment for Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  After his arrival at Fort Dix, Petitioner refused to participate in the Bureau of Prisons' ("BOP") General Education Degree ("GED") program.  As a result, on February 12, 2012, Petitioner was placed in GED unsatisfactory status.

Prior to his placement in GED unsatisfactory status, Petitioner was earning 54 days of Good Conduct Time ("GCT") per year.  After he was placed in unsatisfactory status, however, Petitioner's GCT was reduced to 42 days per year.

The parties are in agreement as to the events that transpired up until the filing of the instant § 2241 habeas petition. (Pet'r's Reply 2, ECF No. 17) ("Petitioner is in total agreement with Respondent's time-line o[f] events, only up to Petitioner's original June 9, 2014 § 2241 petition[.]") (emphasis omitted).

Petitioner first filed a Request for Administrative Remedy with the Warden of FCI Fort Dix on February 12, 2014. (Resp't's Br. 8, ECF No. 15).  At that time, Petitioner sought 54 days of GCT if it was determined that a learning disability was preventing him from completing the GED program. (Id.).  The Warden denied Petitioner's request on March 11, 2014 and explained that Petitioner's GCT was reduced to 42 days per year because Petitioner refused to participate in the GED program.

Petitioner then filed a Regional Administrative Remedy Appeal on March 17, 2014 and argued that, because he is a deportable alien, he is not required to take the GED class. (Resp't's Br. 9, ECF No. 15).  On April 24, 2014, the Regional Director denied Petitioner's appeal and again explained that Petitioner would earn only 42 GCT days annually because he refused to participate in the GED program. (Id.).

Although the parties agree that Petitioner filed the instant petition on June 9, 2014, they disagree as to when, and how, Petitioner continued to pursue his administrative remedies.

3

Respondents contend that Petitioner did not file an appeal of the Regional Director's response until August 18, 2014. (Resp't's Br. 9, ECF No. 15).  Petitioner, however, contends that he filed the instant petition after he submitted his appeal to the Central Office — thus, he asserts his appeal was filed prior to June 9, 2014. (Pet'r's Reply 3, ECF No. 17).  In any event, both parties agree that, to date, no response has been received from the Central Office.

In his Petition, Petitioner asserts that his GCT was "illegally, and unconstitutionally, deducted from him." (Am. Pet. 8, ECF No. 10).  Petitioner explains that he is subject to deportation upon completion of his sentence and, as a result, he contends he is not required to participate in the GED program. Accordingly, Petitioner states that he should receive 54 GCT days annually and he seeks restoration of "approximately, two hundred (200) days" of GCT. (Id.).

In their responsive brief, Respondents explain that Petitioner is not subject to any final order of removal. Therefore, they contend that Petitioner must participate in the GED program in order to receive 54 days of GCT per year. (Resp't's Br. 13, ECF No. 15).  Respondents note that it is unclear how Petitioner calculated a loss of 200 days of GCT and they speculate that Petitioner may have calculated a projected loss for the remainder of his 260 months' imprisonment.

4

Further, Respondents assert that Petitioner has no due process liberty interest in the possibility of receiving 54 days of GCT each year. (Resp't's Br. 15, ECF No. 15).  Finally, Respondents contend that the Petition should be dismissed because Petitioner has failed to exhaust his administrative remedies. (Id.).

In his Reply brief, Petitioner asserts that he did, in fact, exhaust his administrative remedies and he again argues that he is exempt from participation in the GED program because he is a deportable alien. (Pet'r's Reply 1, ECF No. 17).

## II.  STATUTORY FRAMEWORK AND BOP POLICY

The computation of Petitioner's GCT is governed by the provisions of the Prison Litigation Reform Act ("PLRA"), which applies to inmates whose offenses were committed on or after April 26, 1996.

The PLRA contains two literacy provisions.  The first is mandatory and requires the BOP "to have in effect a mandatory functional literacy program for all mentally capable inmates who are not functionally literate in each Federal correctional institution." 18 U.S.C. § 3624(f).  It further requires that each program "shall include a requirement that each inmate participate in such program for a mandatory period sufficient to provide the inmate with an adequate opportunity to achieve functional literacy, and appropriate incentives which lead to successful completion of such programs shall be developed and

5

implemented." Id.  In its implementing regulations, the BOP requires an inmate "who does not have a verified General Education Development (GED) credential or a high school diploma" to "attend an adult literacy program for a minimum of 240 instructional hours or until a GED is achieved, whichever occurs first." 28 C.F.R. § 544.70.

The second literacy provision of the PLRA is non-mandatory and it provides, in relevant part:

> [A] prisoner who is serving a term of imprisonment of more than 1 year [,] ... may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations ... [I]f the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b)(1).

The BOP has implemented regulations which govern the award of GCT under § 3624(b)(1). Specifically, for PLRA inmates, the BOP will award:

> (1) 54 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or
>
> (2) 42 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma.

28 C.F.R. § 523.20(c).

Additional BOP regulations explain what will constitute "satisfactory progress toward earning a GED credential or high school diploma" for a PLRA inmate:

> (b) (1) For the purposes of 18 U.S.C. 3624, an inmate subject to ... the Prison Litigation Reform Act of 1995 (PLRA) shall be deemed to be making satisfactory progress toward earning a GED credential or high school diploma unless and until the inmate receives a progress assignment confirming that:
>
>> (i) The inmate refuses to enroll in the literacy program;
>>
>> (ii) The inmate has been found to have committed a prohibited act that occurred in a literacy program during the last 240 instructional hours of the inmate's most recent enrollment in the literacy program; or
>>
>> (iii) The inmate has withdrawn from the literacy program.
>
> (2) When an inmate subject to ... [the] PLRA receives a progress assignment indicating that the

7

> inmate is not making satisfactory progress, the assignment shall be changed to indicate satisfactory progress only after the inmate is currently and continuously enrolled in a literacy program for a minimum of 240 instructional hours. Any further withdrawal or finding that the inmate has committed a prohibited act in a literacy program during the last 240 instructional hours of the inmate's most recent enrollment in the literacy program shall result in a progress assignment indicating that the inmate is again not making satisfactory progress (see paragraphs (b)(1)(ii) and (iii) of this section).

(c) At the end of 240 instructional hours, excluding sick time, furloughs, or other absences from scheduled classes, the unit team during scheduled program review sessions shall meet with the inmate to encourage continued participation in the literacy program until the inmate earns a GED credential or high school diploma.  At these meetings, the inmate may elect not to continue in the literacy program, and no disciplinary action will be taken.  The inmate may not discontinue this program when participation is mandated by statute.

28 CFR § 544.73(b)-(c).

Further, the BOP Program Statement 5250.28 instructs staff to give an EDI GED Progress Assignment of "GED UNSAT" — for unsatisfactory progress — to any inmate who:

- refuses to enroll in the literacy program;

- is found guilty of a violation in a literacy program. The effective date of the EDI GED UNSAT Progress Assignment is the date when the Unit Discipline Committee (UDC) or Discipline Hearing Officer (DHO) finds the inmate guilty.

    Once found guilty of a Prohibited Act that occurs in the literacy program, he/she will have to complete another 240 instructional hours before he/she can have a GED SAT Progress Assignment; or

- drops out of the literacy program after 240 instructional hours. The inmate may not be deemed to be making satisfactory progress with respect to the VCCLEA and the PLRA.

  However, he/she will be deemed to meet the mandatory literacy attendance (240 instructional hours) requirement.

Federal Bureau of Prisons, Program Statement 5350.28, Literacy Program (GED Standard), § 17.e(2), 31 (2003); see also

http://www.bop.gov/policy/progstat/5350_028.pdf.

### III. DISCUSSION

In relevant part, § 2241 states that the writ of habeas corpus shall not extend to a prisoner unless "[h]e is in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2241(c)(3). Additionally, a prisoner has a liberty interest in GCT credits. Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013). However, for the reasons set forth below, Petitioner has not shown that the BOP has violated federal law or his rights under the Constitution and, therefore, the Petition must be denied.

A. Exhaustion

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); see also Vasquez v. Strada, 684 F.3d 431, 433 (3d Cir. 2012).

9

As set forth above, the parties disagree as to when, and how, Petitioner pursued his administrative appeal to the Central Office. Respondents maintain that Petitioner failed to exhaust his administrative remedies because he did not properly file an appeal until August 18, 2014. Respondents cite to their Exhibit 4 in support of this contention. (Resp't's Br. 9, ECF No. 15). However, unlike Respondents' other Exhibits, Exhibit 4 is a not a copy of Petitioner's request and the BOP's response. Instead, this document is titled "Administrative Remedy Generalized Retrieval Full Screen Format." (Decl. 16-18, Ex. 4, ECF No. 15-1). In addition, there are three separate reports in Exhibit 4, each of which references the receipt of Petitioner's grievance and its status. In comparing these three documents with the attachments petitioner provides in his Reply, it appears to the Court that Petitioner first filed his appeal on May 5, 2014. See (Decl. 16, Ex. 4, ECF No. 15-1) ("DATE RCV: 05-05-2014"); (Pet'r's Reply 8, ECF No. 17) ("DATE RECEIVED: May 5, 2014").

Petitioner states that he then waited "at least, the customary thirty (30) days" before filing the instant Petition on June 9, 2014. (Pet'r's Reply 3, ECF No. 17). Presumably, then, Petitioner interpreted the lack of response within 30 days to be an effective denial of his request. See 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider

10

the absence of a response to be a denial at that level."). However, Petitioner's expectation of a response within 30 days was improper because, by statute, a response from a Central Office appeal is made within 40 days. See 28 C.F.R. § 542.18 ("If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or C[ommunity] C[orrections] M[anager] within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days.") (emphasis added).

Regardless, it appears from the attachments to the parties' submissions that Petitioner's initial May 5, 2014 appeal was rejected on June 30, 2014 (Decl. 16, Ex. 4, ECF No. 15-1) ("STATUS DT: 06-30-2014"), and a Rejection Notice was sent to Petitioner on July 1, 2014. (Pet'r's Reply 8, ECF No. 17) ("DATE: July 1, 2014").  Petitioner explains in his Reply that, on July 15, 2014, he resubmitted his appeal to the Central Office along with copies of his lower level appeals, as requested. (Pet'r's Reply 3, ECF No. 17).

That appeal was received by the Central Office on July 21, 2014. See (Decl. 17, Ex. 4, ECF No. 15-1) ("DATE RCV: 07-21-2014"); (Pet'r's Reply 9, ECF No. 17) ("DATE RECEIVED: July 21, 2014").  However, that appeal, too, was rejected for want of copies of Petitioner's lower level appeals on July 29, 2014.

(Id.).  Petitioner states that he again resubmitted his appeal with the requested documentation on August 8, 2014. (Pet'r's Reply 3, ECF No. 17).  That appeal was received on August 18, 2014 and was accepted by the Central Office. See (Decl. 18, Ex. 4, ECF No. 15-1) ("DATE RCV: 08-18-2014").  A notice dated September 11, 2014 confirmed to Petitioner that his appeal was received and that a response was due to him by October 17, 2014.  See (Decl. 18, Ex. 4, ECF No. 15-1) ("RESP DUE: 10-17-2014"); (Pet'r's Reply 11, ECF No. 17) ("RESPONSE DUE: October 17, 2014").[1]  As set forth above, the parties are in agreement that, to date, no response has been provided by the Central Office.

Having deciphered the procedural history of Petitioner's institutional appeals, it is apparent that Petitioner believed his administrative remedies were exhausted at the time he filed the initial § 2241 petition (ECF No. 1) on June 9, 2014.  He was mistaken.  The appeal was not properly received by the Central Office until July 21, 2014.  Regardless, because the Central Office effectively denied his timely appeal by failing to

---

[1] The Court notes that Plaintiff received an initial notice, also dated September 11, 2014, which indicated a response deadline of September 27, 2014. (Pet'r's Reply 10, ECF No. 17) ("RESPONSE DUE: September 27, 2014").  However, the second notice received by Petitioner clearly indicates that an extension of time for the response was granted and that the new due date was October 17, 2014.  Thus, contrary to Petitioner's assertion in his Reply submission, the Court does not find the fact that both notices were dated the same day to be "odd." (Pet'r's Reply 4, ECF No. 17).

provide a response by the October 17, 2014 due date, see 28 C.F.R. § 542.18, Petitioner's administrative remedies were fully exhausted at the time he filed his Second Amended Petition (EFC No. 10) on December 23, 2014.

Moreover, the Third Circuit has expressed that the purpose for its exhaustion requirement is that:

> (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors.

Arias v. U.S. Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981) (citing United States ex rel. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974)). In this case, each of the purported purposes of the exhaustion requirement as explained by the Third Circuit has been served.

Furthermore, the Third Circuit has stated that "[i]f a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Ridley v. Smith, 179 F. App'x 109, 111 (3d Cir. 2006) (internal quotations and citations omitted). Here, as set forth above, Petitioner's claims were

13

ultimately exhausted — prior to the filing of his Second Amended Petition. Therefore, Petitioner will be permitted to proceed before this Court.

Accordingly, the Court rejects Respondents' argument that the Petition should be dismissed for failure to exhaust administrative remedies. The merits of the Petitioner will be discussed below.

B. Merits

Here, Petitioner's GCT is being calculated pursuant to 18 U.S.C. § 3624, 28 C.F.R. § 523.20(c), 28 C.F.R. § 544.73(b)-(c), and BOP Program Statement 5350.28. The BOP's application of its regulations is entitled to deference from this Court. See Livingood v. Longley, No. 11-19, 2012 WL 1247120, at *6 (W.D. Pa. Apr. 13, 2012) (citing Chevron U.S.A. v. Nat'l Res. Def. Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)), aff'd sub nom. Livengood v. Bureau of Prisons, 503 F. App'x 104 (3d Cir. 2012). Based on the facts of this case, as detailed below, Petitioner has not shown that the BOP has violated any federal law or his rights under the Constitution.

1. PETITIONER MUST RECEIVE SATISFACTORY STATUS IN THE GED PROGRAM TO RECEIVE 54 DAYS OF GCT CREDIT

As set forth above, the award of GCT credit is controlled by 28 C.F.R. § 523.20. Of particular relevance to Petitioner's argument, the statute directs that

14

> an alien who is subject to a final order of removal, deportation, or exclusion is eligible for, but is not required to, participate in a literacy program, or to be making satisfactory progress toward earning a General Educational Development (GED) credential, to be eligible for a yearly award of good conduct time.

28 C.F.R. § 523.20(d).

Petitioner concedes that there is no final order of removal pending against him. Nevertheless, he contends that, because he is a deportable alien, and because "it is certain, and without a doubt, that [he] will, indeed, be deported, upon his release from incarceration[,]" he is not required to participate in the literacy program to be eligible for a yearly award of 54 days of GCT. (Am. Pet. 7, ECF No. 10). In his Reply brief, Petitioner elaborates on this claim and argues that, although he is a deportable alien, he will not be issued a final order of removal until he completes his current sentence. (Pet'r's Reply 5, ECF No. 17). Thus, Petitioner describes the situation as a "conundrum" or "Catch 22." (Id.).

Respondents state simply that there is no final order of removal for Petitioner; therefore, by statute, he must participate and make satisfactory progress in the GED program to receive GCT at a rate of 54 days annually. (Resp't's Br. 13, ECF No. 15). The Court is in agreement.

The Court certainly respects and understands Petitioner's frustration with the fact that his options are limited to

15

participation in a U.S. based GED program to receive GCT when he ultimately may be deported from this country upon completion of his sentence.  Indeed, as Petitioner points out, the BOP has proposed an amendment to its rules regarding GCT which will provide more effective and practical literacy programs to the specialized needs of inmates like Petitioner. GOOD CONDUCT TIME: ALTERNATIVE ADULT LITERACY PROGRAMS, 80 FR 1380-01 (Jan. 9, 2015). Specifically, the proposed changes will allow certain inmates to participate in "authorized alternative adult literacy programs" and, thus, they will not need to demonstrate satisfactory progress toward earning a GED to receive maximum GCT credit. Id. at *1380.

However, these are merely proposed changes and, as such, are not controlling in this case.  The fact remains that a federal inmate who is not subject to final order of removal must make satisfactory progress toward earning a GED to earn 54 days of GCT, even if he is a "sentenced deportable alien" and, as a corollary, is not required to participate in literacy program. 18 U.S.C.A. § 3624(b); 28 C.F.R. §§ 523.20(c)(1, 2), (d), 544.71(a)(3), 544.73(c); De La Cruz v. Zickefoose, 450 F. App'x 123 (3d Cir. 2011).

Thus, even assuming that Petitioner in this case is a "sentenced deportable alien[2]," he is not subject to a final order of removal.  Accordingly, he must make satisfactory progress toward earning his GED in order to receive 54 days of GCT each year. De La Cruz, 450 F. App'x 123.

2. NO DUE PROCESS VIOLATION

A court in this district succinctly addressed the question of whether a due process rights violation had occurred when a petitioner lost the ability to earn the maximum amount of GCT days:

> Finally, petitioner argues that his due process rights were violated.  Petitioner claims that he was entitled to notice and an opportunity to be heard with respect to the deprivation of his liberty interest to earn good time credits. (See Dkt. No. 1 at p. 6.) Nevertheless, petitioner fails to show that his due process rights were violated.  Indeed, "although the Supreme Court has found that the loss of good conduct time entitles a prisoner to appropriate due process, see Wolff v. McDonnell, 418 U.S. 539, 556-57, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), [p]etitioner has no liberty interest in the opportunity to earn good conduct time." Livingood, 2012 WL 1247120, at *7 (citing Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995); Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir.1991); see also Shockley v. Hosterman, No. 07-216, 2007 WL 1810480, at *3 (D. Del. June 22, 2007) ("[T]he Due Process Clause does not guarantee the right to earn good-time credits.") (citing Abdul-Akbar v. Dep't

---

[2] A "sentenced deportable alien" is defined as an inmate who is either (1) "assigned a Public Safety Factor 'H' status of 'Alien'" or (2) "under a final Bureau of Immigration and Customs Enforcement (BICE) (formerly the Immigration and Naturalization Service (INS)) order of deportation, exclusion, or removal." FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT 5350.28, LITERACY PROGRAM (GED STANDARD), § 9(c), 10 (2003).

17

> of Corr., 910 F. Supp. 986, 1003 (D. Del. 1995)). In this case, petitioner's good time credits were not taken away, instead, petitioner simply lost the ability to earn an additional twelve days of good time credits by voluntarily withdrawing from the GED program.

Colon v. Zickefoose, No. 12-3433, 2013 WL 6497957, at *6 (D.N.J. Dec. 11, 2013).

As with the petitioner in Colon, Petitioner in this case was not sanctioned with the loss of GCT days. Rather, he lost the ability to earn 54 days annually when he refused to participate in the GED program. Accordingly, there has been no due process violation. See Livengood v. Bureau of Prisons, 503 F. App'x 104, 107 (3d Cir. 2012) (reduction in GCT earning rate due to GED unsatisfactory status was not a violation of constitutional due process); Colon, No. 12-3433, 2013 WL 6497957 (same).

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's request for a writ of habeas corpus will be denied.

An appropriate Order will follow.

                                                        ____s/ Noel L. Hillman____
                                                       NOEL L. HILLMAN
                                                       United States District Judge

Dated: October 15, 2015
At Camden, New Jersey